FILED

AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

PM 4: 05

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

v.

CASE NUMBER: 2:13-mj-1070-DNF

DELMER HOLMES PARRISH and
PATRICIA PARRISH

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From at least in or about February, 2009, and continuing through in or about July, 2012, in Collier County, in the Middle District of Florida, the defendants did,

knowingly, intentionally, and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown, to commit certain offenses against the United States, that is, to knowingly and willfully execute, and attempt to execute, a scheme and artiface: (a) to defraud health care benefit programs, that is Medicare, Medicaid, and Tricare; and (b) to obtain money and property owned by and under the custody and control of health care benefit programs, that is Medicare, Medicaid, and Tricare, by means of materially false and fraudulent pretenses, representations, and premises, in connection with payments for health care benefits, items and services, namely drug prescriptions.

in violation of Title 18, United States Code, Sections 1347 and 1349.

I further state that I am a Special Agent with the Department of Health and Human Services, Office of the Inspector General (HHS-OIG), and that this Complaint is based on the following facts:    SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof. ☒ Yes ☐ No

Signature of Complainant
Brian D. Harris, Special Agent
U.S. Department of Health & Human Serv.
Office of Inspector General

Sworn to before me and subscribed in my presence,

May 8, 2013                                at      Fort Myers, Florida

DOUGLAS N. FRAZIER
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

I, Brian D. Harris, being duly sworn, state and affirm as follows:

### I. INTRODUCTION

1. I am a Special Agent with the U.S. Department of Health and Human Services, Office of the Inspector General (HHS-OIG) and have been employed as a Special Agent of HHS-OIG for over two years. I am presently assigned to the Tampa Field Office. Prior to my employment as a Special Agent with HHS-OIG, I was employed with the Diplomatic Security Service of the U.S. Department of State as a Criminal Intelligence Analyst for three years. In my capacity as a Special Agent and Criminal Intelligence Analyst, I have led, conducted, and/or participated in criminal investigations of violations of Federal laws involving fraud, in particular, health care fraud.

2. The facts set forth in this affidavit were gathered in the course of an investigation by HHS-OIG, the Defense Criminal Investigative Service (DCIS), and the Drug Enforcement Administration with the assistance of the Collier County Sheriff's Office (CCSO), and the Naples Police Department (NPD). The facts set forth herein are either personally known to me or have been provided to me by other investigators and/or law enforcement officers. Also, some information has been provided to me by witnesses either formally employed by the subject of the investigation, or affiliated with the target in a professional setting. The purpose of this affidavit is to establish probable cause in support of a request for arrest warrants for Delmer Holmes Parrish and Patricia

Parrish. Accordingly, I have not attempted to set forth all facts known to me or other persons associated with the investigation.

3. I am currently conducting an investigation of potential Medicare, Medicaid, and TRICARE fraud-related offenses pertaining to SUNSHINE PHARMACY, INC ("SUNSHINE PHARMACY "), located at 5482 Rattlesnake Hammock Road, in Naples, in the Middle District of Florida; SUNSHINE SOLUTIONS PHARMACY, INC ("SUNSHINE SOLUTIONS"), located at 5480 Rattlesnake Hammock Road, in Naples; Delmer Holmes Parrish ("PARRISH"), a pharmacist and owner of SUNSHINE and SUNSHINE SOLUTIONS; and Patricia Parrish.

4. This affidavit is submitted in support of an application for an arrest warrant for PARRISH and Patricia Parrish. Based upon evidence gathered to date by your affiant and others, your affiant submits that there is probable cause to believe that beginning on a date unknown, but at least by in or about February 2009 and continuing through in or about July 2012, PARRISH and Patricia Parrish did knowingly, intentionally, and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown, to commit certain offenses against the United States, that is, to knowingly and willfully execute, and attempt to execute, a scheme and artifice: (a) to defraud health care benefit programs, that is, Medicare, Medicaid, and TRICARE; and (b) to obtain money and property owned by and under the custody and control of health care benefit programs, that is, Medicare, Medicaid, and TRICARE, by means of materially false and fraudulent pretenses, representations, and promises, in connection with payments for health care benefits, items and services, namely drug prescriptions, in violation of Title 18, United States Code, Section § 1347

and pursuant to Title 18, United States Code, Section § 1349. Pursuant to this conspiracy, PARRISH and Patricia Parrish submitted claims for payment to Medicare, Medicaid, and TRICARE for prescription medications and services without dispensing the medication or providing the services, in violation of United States Code, Section 1349, Conspiracy to Commit Health Care Fraud.

## II. PROBABLE CAUSE

### A. SUNSHINE PHARMACY Corporate Information

5. SUNSHINE PHARMACY registered with the State of Florida on June 4, 1998. The principal address listed for the corporation is 5482 Rattlesnake Hammock Road., Naples, Florida 34113. SUNSHINE PHARMACY has been assigned Florida License Number PH16358. Records with the Florida Secretary of State, Division of Corporations, list PARRISH as the registered agent and President of SUNSHINE PHARMACY.

### B. SUNSHINE SOLUTIONS PHARMACY Corporate Information

6. SUNSHINE SOLUTIONS PHARMACY registered with the State of Florida on August 22, 2007. The principal address listed for the corporation is 5480 Rattlesnake Hammock Road, Naples, Florida 34113. SUNSHINE SOLUTIONS PHARMACY has been assigned Florida License Number PH17844. Records with the Florida Secretary of State, Division of Corporations, list PARRISH as the registered agent and President of SUNSHINE SOLUTIONS PHARMACY.

### C. Federally Funded Insurance Affected

(i) The Medicare Program

7. The Medicare Program ("Medicare") is a federally funded health insurance program created by the Social Security Act of 1965 that provides coverage for people 65 and older and for certain disabled persons (hereinafter "beneficiaries"). The United States Department of Health and Human Services (HHS) is responsible for the administration of the Medicare program. The Centers for Medicare and Medicaid Services (CMS) is the component agency of HHS that administers and supervises Medicare.

8. In December 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act (MMA), amending the Social Security Act by adding Part D under Title XVIII. The MMA allows Medicare payments to insurance plans that contract with CMS to provide qualified Part D prescription coverage to Medicare beneficiaries, as described in 42 C.F.R. § 423.401. For simplicity in this affidavit, the term "Plans" will refer to entities that provide Part D benefits (i.e., prescription coverage) to Medicare beneficiaries.

9. Plans must submit a summary record- called the Prescription Drug Event (PDE) record-to CMS every time a beneficiary fills a prescription covered under Part D. The PDE record contains prescription drug cost and payment data that enables CMS to make payments to Plans and otherwise administer the Part D benefit. As a matter of process, when prescriptions are filled, pharmacies submit claims to the Plans. These claims are submitted electronically to the Plans. Once these claims are adjudicated, the Plans pay the pharmacies for providing the Part D benefits to qualified Medicare beneficiaries. The Plans then reconcile with (or seek reimbursement from) CMS through the submission of the PDE records.

### (ii) The Medicaid Program

10. The Medicaid Program ("Medicaid") is a federally subsidized health insurance program under Title XIX of the Social Security Act, which pays for medical assistance for certain disabled persons and those with low income and minimal resources (hereinafter "recipients"). Medicaid became law in 1965 as a cooperative venture jointly funded by the Federal and State government to assist States in furnishing medical assistance to eligible needy persons. In Florida, Medicaid receives approximately 57% of its funding from the Federal government. The Florida Agency for Healthcare Administration (AHCA) is responsible for the administration of Medicaid in the state of Florida.

11. On July 29, 1999, SUNSHINE PHARMACY, and on October 18, 2005, SUNSHINE SOLUTIONS PHARMACY, submitted Medicaid Provider agreements to AHCA, bearing the apparent signature of PARRISH and his wife. SUNSHINE PHARMACY was subsequently assigned Medicaid Provider number 021438800 with a registered location of 5482 Rattlesnake Hammock Road, Naples, Florida 34113. SUNSHINE SOLUTIONS PHARMACY was subsequently assigned Medicaid Provider number 031077800 with a registered location of 5480 Rattlesnake Hammock Road, Naples, Florida 34113.

### (iii) TRICARE

12. TRICARE is a triple option benefit Plan established by Congress and funded through federal funds allocated through the annual Department of Defense

Appropriation Acts. Eligible beneficiaries include all seven branches of the Uniformed Services: Army, Air Force, Navy, Marine Corps, National Oceanic Atmospheric Administration, Coast Guard, and the commissioned corps of the Public Health Service.

13. TRICARE benefits are authorized by Congressional legislation incorporated in Chapter 55 of Title 10, United States Code, and implemented by the Secretary of Defense and the Secretary of HHS in Title 32, Code of Federal Regulations, Part 199. According to 32 C.F.R. § 199.4, and subject to all applicable definitions, conditions, limitations, or exclusions specified in this part, TRICARE will only pay for medically-necessary services and supplies required in the diagnosis and treatment of illness or injury. This includes the cost sharing of pharmaceuticals.

14. TRICARE contracts with Express Scripts, Inc ("ESI") to manage the TRICARE prescriptions benefit program. ESI has entered into contracts with individual providers including SUNSHINE PHARMACY and SUNSHINE SOLUTIONS PHARMACY.

(iii) **Medicare, Medicaid and TRICARE are Federal Health Care Benefit Programs**

15. Medicare, Medicaid, and TRICARE ( hereafter collectively " healthcare benefit programs") each qualify as a federal "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that all of these programs are public plans, affecting commerce, under which medical benefits, items and services are provided to certain individuals.

### III. Investigation

16.     HHS OIG began its participation in this investigation on or about July 6, 2012, following a referral from another Federal agency.  A summary of relevant portions of the investigation is included to establish probable cause in support of the instant applications.

#### A. Interview of FE1

17.     Former Employee #1 ("FE1"), whose true identity is known to me and others involved in this investigation, is a former Pharmacy Technician for SUNSHINE PHARMACY.  FE1 was employed at SUNSHINE PHARMACY from approximately May 2010 until June 2012.  While employed at SUNSHINE PHARMACY, FE1 had direct access to SUNSHINE PHARMACY records and had thorough knowledge of SUNSHINE PHARMACY operations.

18.     On August 30, 2012, I interviewed FE1.  FE1 advised that during his/her employment at SUNSHINE PHARMACY, fraudulent claims were submitted to federal healthcare benefit programs for prescription medications that were never provided to individual beneficiaries/recipients.  FE1 explained that SUNSHINE PHARMACY intentionally submitted claims for medications not dispensed nor prescribed.

#### B. Claims for Medication Not Prescribed

19.     FE1 further stated that while employed at SUNSHINE PHARMACY, he/she identified claims for medications that were never stocked in the pharmacy,

therefore not dispensed. FE1 further advised that PARRISH falsified prescriptions from physicians, including those relating to a specific physician, Physician #1 ("P1") of a local hospice[1] facility. FE1 advised that SUNSHINE PHARMACY most often fraudulently billed for the prescription drug Megace[2]. FE1 further advised that P1 typically prescribed Megace at a dosage of 40mg; however SUNSHINE PHARMACY submitted claims to federal healthcare benefit programs at a dosage of 625mg which he/she believed to be neither in stock nor prescribed to the patient.

20.     During the course of this investigation, I identified through data analysis of Medicare/Medicaid claims submitted by SUNSHINE PHARMACY and SUNSHINE SOLUTIONS, several high cost medications including 625mg of Megace purportedly prescribed by P1 as stated by FE1.

C.     **Interview of P1**

21.     Physician #1 ("P1"), whose true identity is known to me and others involved in this investigation, is a senior medical staff member at a local hospice care facility in Naples, Florida. I interviewed P1 on or about November 15, 2012. After being informed of the nature of the interview and being presented with the claims submitted by SUNSHINE PHARMACY and SUNSHINE SOLUTIONS, P1 identified claims that he/she did not prescribe. These claims include, but are not limited to, 625mg of Megace as

---

[1] Hospice is a type of care and philosophy of care that focuses on the palliation of a terminally ill or seriously ill patient's symptoms. These symptoms can be physical, emotional, or psychosocial in nature. Hospice care focuses on bringing comfort to patients in their final stages of physical life.
[2] Megestrol acetate ("Megace") is used mainly as an appetite stimulant in a variety of conditions. It can substantially increase appetite in most individuals, even those with advanced cancer, and is often used to boost appetite and induce weight gain in patients with cancer or HIV/AIDS.

stated by FE1 and identified through data analysis. A summary of those claims P1 identified as NOT written by P1 follow:

| Patient ID Number | Rx Number | Dispensed Date | Drug Label |
|---|---|---|---|
| XXXXXX048A | 842079 | 12/12/2009 | LEVAQUIN   TAB 750MG |
| XXXXXX681A | 852238 | 1/26/2010 | ABILIFY   TAB 30MG |
| XXXXXX681A | 852250 | 1/26/2010 | DETROL   TAB 2MG |
| XXXXXX018A | 784021 | 2/26/2009 | SEROQUEL   TAB 400MG |
| XXXXXXX25D6 | 853548 | 2/2/2010 | LEVAQUIN   TAB 750MG |
| XXXXXX096A | 801999 | 6/3/2009 | LIDODERM   DIS 5% |
| XXXXXX879A | 791199 | 4/6/2009 | ABILIFY   TAB 30MG |
| XXXXXX147A | 847163 | 1/5/2010 | LEVAQUIN   TAB 750MG |
| XXXXXX075D | 868044 | 4/26/2010 | LEVAQUIN   TAB 750MG |
| XXXXXX075D | 868043 | 4/26/2010 | LIDODERM   DIS 5% |
| XXXXXX977D | 826941 | 9/28/2009 | LEVAQUIN   TAB 750MG |
| XXXXXX006A | 897070 | 1/22/2011 | MEGACE ES   SUS |
| XXXXXX641A | 789054 | 3/25/2009 | DETROL LA   CAP 2MG |
| XXXXXX825A | 897263 | 1/29/2011 | LIDODERM   DIS 5% |
| XXXXXX825A | 880644 | 8/23/2010 | LIDODERM   DIS 5% |
| XXXXXX825A | 891267 | 12/15/2010 | LEVAQUIN   TAB 500MG |
| XXXXXX108A | 731762 | 4/2/2008 | LEVAQUIN   TAB 750MG |
| XXXXXX316B | 811467 | 5/30/2009 | LEVAQUIN   TAB 750MG |
| XXXXXX942D | 888027 | 11/20/2010 | LEVAQUIN   TAB 750MG |
| XXXXXX942D | 888032 | 11/20/2010 | LIDODERM   DIS 5% |
| XXXXXX969A | 823841 | 8/18/2009 | LEVAQUIN   TAB 750MG |
| XXXXXX654A | 850170 | 1/16/2010 | LEVAQUIN   TAB 750MG |
| XXXXXX659B | 871500 | 5/17/2010 | LEVAQUIN   TAB 750MG |
| XXXXXX391A | 818277 | 8/13/2009 | LEVAQUIN   TAB 750MG |
| XXXXXX119A | 841778 | 12/10/2009 | LEVAQUIN   TAB 750MG |
| XXXXXX971A | 792320 | 4/11/2009 | LIDODERM   DIS 5% |
| XXXXXX250B | 820652 | 8/25/2009 | LIDODERM   DIS 5% |
| XXXXXX250B | 794394 | 4/22/2009 | LIDODERM   DIS 5% |
| XXXXXX431D | 808810 | 6/30/2009 | LIDODERM   DIS 5% |
| XXXXXX172A | 784019 | 2/26/2009 | SEROQUEL   TAB 400MG |

D. **Additional Former Employees Identifying Delmer and Patricia Parrish**

(i). **Interview of FE2**

Page 9 of 14

22.     Former Employee #2 ("FE2"), whose true identity is known to me and others involved in the investigation, is a former Office Manager for SUNSHINE PHARMACY from approximately June 2002 until approximately May 2012. While employed at SUNSHINE PHARMACY, FE2 had direct access to SUNSHINE PHARMACY records and had thorough knowledge of SUNSHINE PHARMACY operations.

23.     FE2 was interviewed and provided information relating to this investigation. FE2 advised that during his/her employment with SUNSHINE PHARMACY, PARRISH and SUNSHINE PHARMACY began to lose contracts with the various Assisted Living Facilities in the area due to a lack of inventory of medications needed. Additionally, there were times when medications were billed to federal healthcare benefit programs but not dispensed. FE2 stated that PARRISH submitted claims to federal healthcare benefit programs for the following medications that were not dispensed:

- Megace (625mg)
- Seroquel
- Levaquin (750mg)
- Abilify
- Plavix (occasionally)

24.     FE2 stated that customers complained about billing because they, or the person for whom they were responsible, had received an Explanation of Benefits (EOB) with medications on it that were not correct. Additionally, FE2 recalled that at times when he/she worked at the pharmacy, "random" and unexplained prescriptions would come off the printer as though they needed to be filled. FE2 indicated that these unexplained prescriptions were printed by Patricia Parrish. FE2 further explained that

these prescriptions would be printed by the computer automatically as part of the claim billing process unless an individual remembered to manually tell the computer not to print the billed-for prescription. FE2 explained that that no customer was actually seeking to have those specific prescriptions filled.

25. FE2 saw Patricia Parrish and others submit claims for payment, and advised that Patricia Parrish was responsible for the fraudulent claims submitted to federal healthcare benefit programs to obtain funds to keep the pharmacy in operation. FE2 personally engaged in a conversation with Patricia Parrish regarding the fraudulent activity in which she (Patricia Parrish) was engaged. FE2 advised that Patricia Parrish's response was that she would cease, however she continued in the activity.

26. FE2 also engaged in a personal conversation with PARRISH regarding the purported fraudulent billing practices, in which he responded to FE2 that he would cease.

(ii).  **Interview of FE3**

27. Former Employee #3 ("FE3"), whose true identity is known to me and others involved in this investigation, is a former Pharmacist for SUNSHINE PHARMACY. FE3 was employed at SUNSHINE PHARMACY from approximately April 2011 until approximately April 2012. While employed at SUNSHINE PHARMACY, FE3 had direct access to SUNSHINE PHARMACY records and had thorough knowledge of SUNSHINE PHARMACY operations.

28. On August 30, 2012, I interviewed FE3. FE3 advised that during his/her employment at SUNSHINE PHARMACY, PARRISH submitted claims for refills for

patients for expensive medications, but the medications were not in stock. Additionally, PARRISH would submit claims for "50-60" prescriptions for an expensive medication, but only have "2-4" prescriptions worth of the medication in stock.

29. FE3 advised that Patricia Parrish knew that the claims she was submitting were fraudulent, however she needed to generate revenue for the pharmacy. FE3 personally expressed his/her concerns to PARRISH about the issues that were occurring at the pharmacy, and PARRISH responded that he would "take care of it".

(iii). **Interview of FE4**

30. Former Employee #4 ("FE4"), whose true identity is known to me and others involved in the investigation, is a former Pharmacy Technician and Billing Specialist for SUNSHINE PHARMACY from approximately 2008 until approximately the summer of 2010. While employed at SUNSHINE PHARMACY, FE4 had direct access to SUNSHINE PHARMACY records and had thorough knowledge of SUNSHINE PHARMACY operations.

31. FE4 was interviewed and provided information relating to this investigation. FE4 advised that during his/her employment with SUNSHINE PHARMACY, he/she found the biggest fraud was with the hospice patient prescriptions, because the pharmacy has the patients' social security numbers, and the pharmacy would run prescriptions for a medication called Megace. Additionally, FE4 stated that Patricia Parrish possessed a book containing the credit card information of hospice patients, and in the back of the book were instructions from PARRISH as to which medications Patricia Parrish should bill for.

32. FE4 advised that PARRISH changed prescriptions to reflect other medications; and justified his actions by stating that the change in prescription was authorized by the prescribing physician. FE4 did not believe those changes were authorized by the prescribing physician. FE4 recalled a specific patient who complained about the medication she was provided. It was determined that the patient was provided medication to which they were allergic, and was not the medication specifically prescribed by their physician. The physician of the patient also complained to PARRISH telephonically about this unauthorized change, and when the prescription was pulled at the pharmacy, it had "ok per doctor" affixed.

33. FE4 advised that in addition to herself/himself, there were approximately three (3) other persons working in the billing office including Patricia Parrish. However, PARRISH was responsible for the false claims that were submitted. FE4 further stated that PARRISH often submitted claims to federal healthcare benefit programs for prescription refills before a refill of that medication was requested by a patient, and if the medication was not requested or received by that patient, he would not reverse[3] the claim. Additionally, PARRISH reprimanded others for not engaging in the scheme.

### IV. Conclusion

34. Based upon the investigation to date, your affiant respectfully submits that there is probable cause to believe that Delmer Holmes Parrish and Patricia Parrish, did knowingly, intentionally, and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown, to commit certain offenses

---

[3] A claim reversal is the process in which a healthcare provider, including a pharmacy, can refund insurance plans for payment(s) received.

against the United States, that is, to knowingly and willfully execute, and attempt to execute, a scheme and artifice: (a) to defraud health care benefit programs, that is, Medicare, Medicaid, and TRICARE; and (b) to obtain money and property owned by and under the custody and control of health care benefit programs, that is, Medicare, Medicaid, and TRICARE, by means of materially false and fraudulent pretenses, representations, and promises, in connection with payments for health care benefits, items and services, namely drug prescriptions, in violation of Title 18, United States Code, Section 1347. All pursuant to Title 18, United States Code, Section 1349.

WHEREFORE, your affiant requests this Court issue arrest warrants for both Delmer Holmes Parrish and Patricia Parrish, for a violation of Title 18, United States Code, Section 1349.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Brian Harris, Special Agent
U.S. Department of Health and Human Services
Office of the Inspector General
Office of Investigations

Subscribed and sworn to before me
this _6th_ day of May 2013.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE